**TULSA TORPEDO CO. et al. v. KENNEDY et al.**

No. 18199. Opinion Filed June 5, 1928.

(Syllabus.)

1. **Equity—Doctrine of Clean Hands, When Applicable.**

The maxim that one coming into a court of equity must come with clean hands applies only in case of fraud or misconduct on the part of the complainant in regard to the transaction there under consideration.

2. **Receivers—Qualifications of Person not a Party or Attorney.**

Section 519, C. O. S. 1921, providing, no party, or attorney, shall be appointed receiver, except by consent of all parties thereto, does not disqualify one from being appointed receiver who is neither a party nor attorney in the action and who has no pecuniary interest in the action or subject-matter of the receivership.

3. **Corporations—Right to Receiver in Action by Minority Stockholders.**

In an action by minority stockholders in behalf of the corporation against its officers

and others who have converted its assets and unlawfully intermingled funds of the corporation with their own, equity will appoint a receiver under section 518, C. O. S. 1921.

Error from District Court, Tulsa County; R. D. Hudson, Judge.

Action by W. D. Kennedy and another against the Tulsa Torpedo Company and others. Motion by defendants to vacate appointment of receiver overruled, and they appeal. Affirmed.

W. P. Nelson, for plaintiffs in error.

Lashley & Rambo and Russel B. James, for defendants in error.

RILEY, J. This is an appeal from a judgment refusing to vacate the appointment of a receiver.

The trial court, without notice, upon the petition of Kennedy and Weister, minority stockholders, which petition was verified only upon information and belief, appointed a receiver for the Tulsa Torpedo Company, a corporation. The petition did not allege insolvency as a ground for the appointment, and there was no allegation of an emergency so great as to warrant procedure without notice. The defendants below, Tulsa Torpedo Company, W. J. Donnell, W. B. Blair, and Gertrude Donnell, moved to vacate the order appointing the receiver. The grounds for vacation were: (1) Insufficiency of facts alleged in the petition. (2) Verification on information and belief. (3) Lack of notice. (4) Interest of the individual appointed receiver. (5) Fraud of petitioners against third parties.

The third ground is waived by reason of the first and last, which go to the merits of the controversy, and a general appearance is thereby made. As to the second ground, the petition was properly verified at the time of the hearing on the motion to vacate, so the same is eliminated. We shall consider the remaining grounds together with the evidence in support of them.

The last ground was the fraud against third parties. There was evidence that plaintiff's stock was partly issued in consideration of promotion of business with other companies represented by plaintiffs, but the record is clear (C.-M. 50) that plaintiffs below were bona fide stockholders and owners at least of a portion of the stock assigned to them. The facts disclosed by the testimony of defendant W. J. Donnell were that he organized the corporation concerned in 1925, and issued to himself 744 shares of stock at par value of $10 per share. Thereafter 279 shares were assigned to plaintiff Weister and 184 shares to plaintiff Kennedy. Weister was taken into the company, according to the witness, because he was an officer in the Tidal Oil Company and for the reason of thereby securing the Tidal Oil Company's business and patronage. Kennedy's situation was the same, and the result was that the Tulsa Torpedo Company obtained the business patronage of the Tidal Oil Company. A competitor, the Eastern Torpedo Company, in the same business offered to "shoot" oil wells on the basis of $1.50 per quart of explosive, and the witness Donnell, together with plaintiffs Weister and Kennedy, in order to continue with the lucrative patronage of the Tidal Oil Company at their existing rate of $2.50 per quart of explosive, agreed to talk "quality" of materials, consisting of gelatin used in their explosive, and to disparage the nitroglycerin and a substance known as "solidified" used by their competitor, and Donnell testifies further that there was no difference between the materials used by the different companies, but that Kennedy had the power for the Tidal Company to determine which torpedo company should be patronized. The usual and customary charge for torpedo services in the community at that time was $2.50 per quart. Kennedy testified he had nothing to do with fixing the price paid by the Tidal Company, but that the Tidal Company did require gelatin in preference to nitroglycerin and "solidified" because of the relative qualities, and that there was never any objection on the part of the Tidal Oil Company to the giving of its business to the Tulsa Torpedo Company. Such also was Weister's testimony.

Appellants say that plaintiffs, by stifling competition for the benefit of the Tidal Company, a third party of which they were officers, defrauded the Tidal Company, consequently they come into this court of equity with unclean hands and should not be heard.

There is doubt as to the sufficiency of the proof to support ground 5 as alleged. We consider also that there is a limitation to the maxim, "He who comes into a court of equity, must come with clean hands." We recognize "that equity has refused to aid either party where both are participants in a transaction in fraud of a third person, either to carry out their arrangement, to set it aside, or to relieve in any way with reference to it" (21 C. J. 185,) or to relieve "either party to an agreement tainted with illegality or fraud against a third person where both

parties are in pari delicto" (Flesner v. Cooper, 62 Okla. 263, 162 P. 1112) ; but to apply the maxims relied upon to the facts in this case would be to pervert them and to say that a man who has done wrong to another shall not be heard in any cause of equity. Such is extending incriminations to collateral stages. Langley v. Devlin (Wash.) 163 Pac. 395.

Pomeroy's Eq. Jur., sec. 399, says:

"It must be evil practice or wrong conduct in the particular matter or transaction in respect to which judicial protection or redress is sought."

In Ansley v. Wilson, 50 Ga. 418, the chancellor said:

"All complainants in equity are human beings, full of faults and sin, and I doubt if there is one case in ten in which the complainant is not somewhat to blame." American Association v. Innis (Ky.) 60 S. W. 388.

The federal court said in Bonsack Machine Co. v. Smith, 70 Fed. 383:

"The rule that one coming into equity must come with clean hands is confined to the conduct of the parties in the matter before the court, and not to matters aliunde. Courts of equity, as well as courts of law, will not refuse redress to the suitor because his conduct in other matters not then before the court may not be blameless." Liverpool and London Globe Ins. Co. v. Clonie, 88 Fed. 160; Lyman v. Lyman (Conn.) 97 Atl. 312. L. R. A. 1916E, 643.

A personal injury is sometimes a prerequisite showing for the party defending under the maxim of "unclean hands." Bentley v. Tibbals, 223 Fed. 247; First Nat. Bank v. Carter (Md.) 103 Atl. 463; Halladay v. Faurot, 8 Ohio Dec. Reprint, 633; Langdon v. Templeton, 66 Vt. 173, 28 Atl. 866; Galbraith v. Devlin, 85 Wash. 482, 148 Pac. 589.

No basic element of fraud was established in the relation with the third party, and the maxim cannot be successfully invoked as a defense.

We now consider the first ground, to wit, insufficiency of facts alleged in the beginning for the appointment of a receiver.

Section 518, C. O. S. 1921, provides for appointment of a receiver, under the first subdivision, upon application of any party whose interest is probable and where it is shown that the property is in danger of being lost, removed, or materially injured, and under the sixth subdivision, "In all other cases where receivers have heretofore been appointed by the usages of the courts of equity." Thompson on Corps. (2nd Ed.) 1150; Moron v. Park, 93 Okla. 201, 220 Pac. 589; McDonald v. Bohling, 102 Okla. 243, 228 Pac. 783; Exchange Bank v. Bailey, 29 Okla. 246, 116 Pac. 812.

The appointment of a receiver under article 19, chapter 3, C. O. S. 1921, is a matter within the sound discretion of the trial court, and an order appointing or refusing to appoint such receiver will not be disturbed unless an abuse of discretion is shown.

In Hughes v. Garrelts, 35 Okla. 321, 129 Pac. 43, it was held:

"Nor is it necessary, in order that plaintiffs be entitled to the relief demanded, that it be shown that the defendants or the concerns receiving the oil are insolvent. Mead v. Burke, 156 Ind. 577, 60 N. E. 338."

And further, it was pointed out:

"By the foregoing it is seen that, where interest in property or funds or the proceeds thereof is probable, and where the property is being removed or is in danger of being lost, this is sufficient. Willard Oil Co. v. Riley, 29 Okla. 19, 115 Pac. 1103."

In Union St. Bank v. Mueller, 68 Okla. 152, 172 Pac. 650, it was the view that it would amount to a denial of justice if courts of equity were unable to afford a remedy where no adequate remedy could be had at law, and where it was probable that upon final trial gross mismanagement of the affairs of a corporation would be shown which resulted in wrecking its business and wresting from stockholders its property, the court was justified in appointing a receiver to determine the rights of minority stockholders.

In the case of Riverside Oil & Refg. Co. v. Lynch, 114 Okla. 198, 243 Pac. 967, it was held to be the duty of a court to appoint a receiver for a corporation at the request of stockholders who showed mismanagement and fraud on the part of managing officers.

The trial court found that the business and properties of the defendant corporation had been mismanaged and mishandled and that there was grave danger that the business and property of the corporation would be lost to the stockholders unless a receiver was appointed.

As a basis for the trial court's finding there was evidence that the property of the corporation was in the exclusive control of defendant W. J. Donnell and that the same was being used for the personal benefit of said defendant; that credit was being with-

held from said corporation and lien suits were being filed. Numerous claims existed against the business. Donnell had failed to furnish the minority stockholders with an audit or statement of the affairs of the business, but withheld from them knowledge of the business and its condition. No meeting of stockholders or directors was ever held. While the evidence to support the ground for relief was vague and not wholly satisfactory, under the circumstances we do not feel justified in disturbing the conclusion of the trial court.

Finally, there is to be considered the interest of the receiver appointed.

Section 519, C. O. S. 1921, provides:

"No party, or attorney, or person interested in an action, shall be appointed receiver therein, except by consent of all parties thereto."

The objection to Fred M. Boso, who was appointed receiver, was that he was service agent for the corporation concerned in the state of Texas and at one time had agreed to purchase some stock in the corporation in order to comply with certain requirements for permission to do business within the state of Texas. He never owned any interest and abandoned all intent of purchasing stock. He was not a party to the suit nor attorney. He was not pecuniarily interested in the action. He was not disqualified to act as receiver. Smedley v. Kirby (Mich.) 79 N. W. 187; Foreman v. Marianna, 43 Ark. 324; Ellis v. Smith, 42 Ala. 349.

The judgment is affirmed.

BRANSON, C. J., MASON, V. C. J., and LESTER and HEFNER, JJ., concur.

Note—See under (1) 21 C. J. p. 187, §173; anno. 4 A. L. R. 44; 10 R. C. L. p. 389; 2 R. C. L. Supp. p. 1008; 4 R. C. L. Supp. p. 664; 5 R. C. L. Supp. p. 553; 6 R. C. L. Supp. p. 610. (2) 34 Cyc. p. 140; 23 R. C. L. p. 41; 4 R. C. L. Supp. p. 1490. (3) 14a C. J. p. 952, §3169; anno. 5 A. L. R. 368; 23 R. C. L. p. 23; 7 R. C. L. Supp. p. 765.